FILED
2007 Jun-08  AM 10:58
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| AL RABIEE, et al.,       ) | |
|      ) | |
|     Plaintiffs,      ) | |
|      ) | |
| v.      ) | CASE NO.:  2:07-CV-302-VEH |
|      ) | |
| CALLIE T. DIETZ, in her official   ) | GERALD BARD TJOFLAT |
| capacity as Director of the     ) | U.S. Circuit Judge |
| Alabama Administrative Office   ) | SHARON LOVELACE BLACKBURN |
| of Courts,      ) | U.S. Chief District Judge |
|      ) | VIRGINIA EMERSON HOPKINS |
|     Defendant.      ) | U.S. District Judge |

## MEMORANDUM OPINION

**PER CURIUM:**

This case is currently before the court on the Motion to Dismiss filed by defendant Callie T. Dietz ("Dietz").  (Doc. 13.)[1]  Upon consideration of the record, the submissions of the parties, and the relevant law, the panel is of the opinion that the Motion is due to be granted.

## I.    INTRODUCTION

Plaintiffs Al Rabiee and William H. Whitehead initiated this declaratory judgment action pursuant to 28 U.S.C. § 2201, against Dietz, in her official capacity as Director of the Alabama Administrative Office of the Courts.  Plaintiffs assert

---

[1] Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

claims under Section 5 of the Voting Rights Act ("VRA"), 42 U.S.C. § 1973c, and under the Due Process Clause of the Fourteenth Amendment in conjunction with 42 U.S.C. § 1983.

Section 5 of the VRA governs changes in voting procedures, with the purpose of preventing jurisdictions covered by its requirements from enacting or seeking to administer voting changes that have a purpose or effect of denying or abridging the right to vote on account of race or color. *Lopez v. Monterey County, CA*, 519 U.S. 9, 12 (1996). Pursuant to Section 5, as a "covered jurisdiction," Alabama must obtain judicial preclearance from the United States District Court for the District of Columbia, or administrative preclearance from the United States Attorney General, before enacting or seeking to enforce "any voting qualification or prerequisite to voting, or standard, practice, or procedure with respect to voting . . ." 42 U.S.C. §§ 1973b, 1973c(a). "To obtain administrative preclearance of a new law affecting voting, a covered jurisdiction must submit the new law to the Attorney General of the United States. If the Attorney General does not object within 60 days of submission, the jurisdiction may enforce the legislation." *Lopez*, 519 U.S. at 12. Private citizens may bring suit to enforce Section 5, which "shall be heard and determined by a [district court] of three judges. . ." 42 U.S.C. § 1973c(a).

2

_____**A.**    **Summary of Plaintiffs' Claims**

Plaintiffs' Complaint concerns an Alabama statute codified at Ala. Code §§ 12-24-1, 12-24-2 (the "Alabama Statute"), and contains four counts.  Count One seeks appointment of a three-judge panel and declaratory judgment that the Alabama Statute does not require Section 5 preclearance. (Doc. 1, Compl. ¶ 25.)  Count Two seeks injunctive relief under 42 U.S.C. § 1983 and the Due Process Clause of the Fourteenth Amendment requiring Dietz to enforce the statute. (Doc. 1, Compl. ¶ 26.)  Counts Three and Four contain alternative remedies in the event that the panel concludes that the Statute does require preclearance.[2]  Count Three seeks declaratory judgment that the Statute requires Section 5 preclearance. (Doc. 1, Compl. ¶ 27.)  Count Four requests the panel to issue any and all orders necessary to compel the state of Alabama to submit the statute for preclearance. (Doc. 1, Compl. ¶ 27.)

**B.**    **History of the Alabama Statute**

The Alabama Statute was signed into law as Act No. 95-648, Ala. Acts 1995, on July 31, 1995;  effective beginning with the first election after January 1, 1996.  It was intended "to require the recusal of a justice or judge from hearing a case in which there may be an appearance of impropriety because as a candidate, the justice

---

[2]The third and fourth counts in Plaintiffs' Complaint are both labeled Count Three.  The panel will assume that this is a mistake by Plaintiffs' counsel and will refer to the final count as Count Four.

or judge received a substantial contribution" from a party in the case, attorneys for the party, or certain other individuals.  Ala Code. § 12-24-1.  Under the Statute, a contribution of more than four thousand dollars ($4,000) to the campaign of a justice or judge of an appellate court, or a contribution of more than two thousand dollars ($2,000) to the campaign of a circuit judge, is considered a "substantial contribution." *See* Ala. Code § 12-24-2(c).  The Statute requires, *inter alia*: (1) all Alabama state court justices and judges to file with the Secretary of State annual public statements disclosing campaign contributions; (2) the Alabama Supreme Court to promulgate rules of court requiring attorneys to serve on all counsel of record in each case certificates of disclosure stating the amount, if any, of campaign contributions made to the most recent election campaign of the presiding justice or judge by all attorneys of record, any attorney with whom they practice, their clients, and related parties; and (3) upon the filing of a written notice of recusal, Alabama state court justices and judges to recuse from any case in which the attorneys, their clients, or the related parties contributed over a certain amount of money to the judge's campaigns.  See Ala. Code § 12-24-2.

In March 1996, then Alabama Attorney General Jeff Sessions submitted the Alabama Statute to the United States Department of Justice ("DOJ") for preclearance under Section 5 of the Voting Rights Act.  On May 13, 1996, the DOJ responded,

requesting additional information from the Attorney General including, *inter alia*: the rule or rules adopted by the Alabama Supreme Court pursuant to the Statute; a list of each campaign contribution for each successful candidate for each Alabama justice and judge position since 1989; and a description of each instance since 1989 in which a party to litigation in the Alabama courts had sought recusal based on a judicial campaign contribution.  The DOJ agreed that the Statute required preclearance, reasoning that the recusal provision triggered by the reporting requirements would result in lower individual campaign contributions to candidates for judicial election, requiring candidates to seek contributions from a wider range of supporters. According to the DOJ, because of "societal discrimination," black candidates face greater obstacles in securing contributions from the public at large.  Therefore, the DOJ concluded that enforcement of the Alabama Statute would make it more difficult for black candidates to run successful campaigns, thereby reducing the voting effectiveness of minority voters.

Attorney General Sessions responded on May 20, 1996, by withdrawing the Statute from submission, asserting that, after further review, his office had determined that it does not require preclearance because it does not "bear a direct relation on voting itself."  The Alabama Attorney General's position relied on *Presley v. Etowah County Commission*, 502 U.S. 491, 510 (1992).  The DOJ responded on July 23,

5

1996, expressing its disagreement with the Attorney General's reasoning, and requesting that the Statute be re-submitted for preclearance review. The Attorney General responded by letter dated July 30, 1996, stating, *inter alia*: "The State of Alabama will enforce Act No. 95-648, and the Attorney General of Alabama will not submit this law for preclearance. Section 5 does not apply. If you disagree, we respectfully suggest that you proceed to enforce your interpretation of Section 5 in this context." Almost one year later, in a letter to the Alabama Attorney General dated July 18, 1997, the DOJ again insisted that the Statute be submitted for preclearance. The DOJ requested that the Attorney General "inform us of the action the State of Alabama plans to take concerning this matter." The new Alabama Attorney General, now Judge William Pryor, responded on July 23, 1997, by informing the DOJ that the Statutes would not be submitted for preclearance because, in his opinion, Section 5 does not apply. There is no record of further correspondence between the Alabama Attorney General and the DOJ regarding the preclearance of the Alabama Statute.

The Attorney General has never taken steps to enforce the Statute. Moreover, the Alabama Supreme Court has never promulgated rules as required by the statute, taking the position that, pursuant to Section 5 of the Voting Rights Act, the Statute is not legally enforceable until it has been precleared by the Attorney General or the

United States District Court for the District of Columbia.  On November 23, 1998, the Clerk of the Supreme Court of Alabama stated by letter to the judicial inquiry commission that "the official reason" for the Supreme Court's failure to adopt rules implementing Ala. Code § 12-24-2(b) was because "the Act had not been precleared by the Justice Department."  The Alabama Supreme Court has also indicated its position, directly and indirectly, in several opinions.  *Ex parte McLeod*, 725 So.2d 271, 274 n.3 (Ala. 1998) (noting that "preclearance of [the Statute] by the United States Justice Department is still pending" and stating that "it would be futile for this court to impose on judges a duty to disclose contributions when, upon the Justice Department's approval of the new statute, that duty will shift to the contributing parties."); see also *Finley v. Patterson*, 705 So.2d 834, 835 n. 1 (Ala. 1997) (Cook, J., specially concurring, noting that the enforcement of the Alabama Statutes "is in legal limbo" because there has been no resolution to the dispute between the Alabama Attorney General and the DOJ); *Bracking v. Trimmier Law Firm*, 897 So. 2d 207, 233-34 (Ala. 2004) (Brown, J., denying a motion to recuse under the Alabama Statute, stating that because the Statute has not obtained preclearance, "it is questionable whether [it is] even enforceable," citing *Ex parte McLeod*, and *Finley*).

The Alabama Administrative Office of Courts ("AOC"), and presumably its Director, defendant Dietz, have likewise taken the position that the Alabama Statute

requires preclearance under Section 5 of the VRA.  On January 6, 1999, Frank W. Gregory, then-Director of the AOC, wrote a letter to the presiding circuit judge of Tuscaloosa County advising that, in light of the DOJ's position as stated in its July 18, 1997 letter, "our office will not take any further action for non compliance with [the Statute's] provision[s]."  The AOC reiterated its position to other Alabama Circuit Judges in letters dated January 11, 1999, March 13, 2000, and June 8, 2000. It appears that the last correspondence on this issue was the AOC's June 8, 2000 letter.

Plaintiffs contend that the Statute was adopted for their use and benefit and the use and benefit of those similarly situated and, therefore, the failure or refusal to enforce the Alabama Statute is a violation of their rights under the Due Process Clause of the Fourteenth Amendment.  Both Plaintiffs are parties in litigation currently pending in Alabama state court.[3]  Both have moved for the recusal of the presiding judges in their respective cases pursuant to the terms of the Alabama Statute.  Plaintiffs contend that each judge has received campaign contributions from the opposing parties and/or the opposing parties' lawyers in amounts that would

---

[3]Plaintiffs' cases are styled: *William H. Whitehead v. Bradley, Arant, Rose & White, LLP, et al.*, CV-2005-6143 (Circuit Court of Jefferson County, Alabama; Hon. Tom King presiding); *Terry Slaughter v. Al Rabiee, et al.*, CV-2005-7674 (Circuit Court of Jefferson County, Alabama; Hon. Robert Vance, Jr. presiding).

require recusal under Ala. Code. § 12-24-2(c).  Their motions to recuse were denied.

Both Plaintiffs filed petitions for a writ of mandamus to the Alabama Supreme Court.

Plaintiff Whitehead also filed a motion to recuse all but one of the Justices of the

Supreme Court on consideration of his petition on the ground that each had received

campaign contributions from the opposing parties and/or the opposing parties'

lawyers in amounts that would require the Justices' recusal under the Statute.  The

Supreme Court denied Whitehead's motion to recuse, as well as both Plaintiffs'

petitions for mandamus.

### C.    Plaintiffs' Previous Action

Plaintiffs Rabiee and Whitehead filed a similar action in this court on July 20,

2006 against Governor Robert Riley and Attorney General Troy King on virtually

identical grounds.  CV-06-1395-RDP.  A three-judge panel convened in that case

included U.S. Circuit Judge Frank M. Hull, and U.S. District Judges David R. Proctor

and Virginia Emerson Hopkins.  In their complaint, Plaintiffs requested a declaratory

judgment that Ala. Code §§ 12-24-1, 12-24-2 <u>do</u> require preclearance under Section

5 of the VRA.  However, in their trial brief, Plaintiffs abandoned their original

position, and argued that the Alabama Statute <u>does not</u> need to be precleared.  As

noted above, the Alabama Attorney General has maintained his position that the

Alabama Statute does not require Section 5 preclearance.  Governor Riley also took

that position.  Because the position Plaintiffs stated in their trial brief mirrored that of the defendants, the panel determined that no "case" or "controversy" existed as is required for federal court jurisdiction under Article III of the United States Constitution.[4]  Plaintiffs' complaint was dismissed.

Plaintiffs filed this action against the Director of the AOC in her official capacity.  Here, Plaintiffs have taken the position they eventually reached in their previous action, that the Alabama Statute <u>does not</u> require preclearance.  Plaintiffs have thus avoided the particular Article III problem they faced in their former action, as the AOC's position on the issue of preclearance of the Alabama Statute is directly adverse to Plaintiffs' position.  However, Plaintiffs again fail to meet the "case or controversy" requirement of Article III and the Declaratory Judgment Act.

## II.   DISCUSSION

Plaintiffs request relief in the form of two alternative schemes.  Primarily, they seek a declaratory judgment that the Alabama Statute does <u>not</u> require preclearance, and they ask for an injunction under 42 U.S.C. § 1983 ordering Dietz to enforce the statutes.  As an alternative, should the court declare that preclearance <u>is</u> required,

---

[4]Article III of the Constitution restricts the jurisdiction of federal courts to actual "cases" or "controversies."  U.S. Const. Art. III, § 2, cl. 1; *see Elend v. Basham*, 471 F.3d 1199, 1204 (11th Cir. 2006).  Likewise, the Declaratory Judgment Act applies only in cases involving an "actual controversy."  28 U.S.C. § 2201.

Plaintiffs ask the court "to issue such orders as are necessary to ensure that Alabama submits the Statutes for preclearance," pursuant to *Lopez v. Monterey County*, 519 U.S. 9, 23 (1996) (holding that the goal of a three-judge panel facing a challenge under Section 5 must be to ensure that the covered jurisdiction submits the challenged legislation to the appropriate federal authorities for preclearance as expeditiously as possible). Dietz moves the court to dismiss Plaintiffs' Complaint on the grounds that she is not a proper defendant in this action because neither she nor the AOC have the authority to enforce the Alabama Statute.[5]

Although the question of standing is not addressed in the parties' briefs, "the federal courts are under an independent obligation to examine their own jurisdiction, and standing is perhaps the most important of [the jurisdictional] doctrines." *United States v. Hays*, 515 U.S. 737, 742 (1995) (quoting *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 230-31 (1990) (internal quotations omitted; alterations in original)). Any plaintiff seeking to invoke a federal court's jurisdiction bears the burden of establishing standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). "If a plaintiff lacks standing, the 'case' or 'controversy' requirement of Article III, § 2 of the U.S. Constitution is not satisfied, and the case must be dismissed." *Koziara v.*

---

[5]Defendant also contends that she is shielded from Plaintiffs' claims by Eleventh Amendment immunity. Because the panel finds that Plaintiffs' Complaint fails on the threshold issue of standing, it will not reach the issue of Dietz's immunity.

*City of Casselberry*, 392 F.3d 1302, 1304 (11th Cir. 2004). The "irreducible constitutional minimum of standing contains three elements." *Lujan*, 504 U.S. at 560. First, the plaintiff must be able to show that he has suffered an injury in fact – an invasion of a legally protected interest which is concrete and particularized, and actual or imminent, not conjectural or hypothetical. *Id*. Second, there must be a causal connection between that injury and the challenged action of the defendant – the injury must be "fairly traceable" to the defendant, and not the result of the independent action of some third party. *Id*. Finally, it must be likely, rather than merely speculative, that a favorable judgment will redress the plaintiff's injury. *Id*. at 561.

Plaintiffs' alleged injury is the denial of their right under Ala. Code § 12-24-2(c) to require the recusal of their presiding Alabama circuit judges, each of whom Plaintiffs allege received more than $2,000 from Plaintiffs' opposing parties and/or the opposing parties' lawyers. Plaintiff Whitehead also alleges the denial of his right to require the recusal of certain justices of the Alabama Supreme Court on consideration of his petition for writ of mandamus, each of whom Plaintiffs allege have received more than $4,000 from Plaintiff Whitehead's opposing party and/or the opposing party's lawyers. The actions Plaintiffs challenge, therefore, appear to be the denial of their motions to recuse by the Alabama circuit judges and certain justices

12

of the Alabama Supreme Court which, in turn, was caused by one of two things.  If the Statute does not require preclearance, the injury was caused by the failure to enforce the Statute; however, if the Statute does require preclearance, the injury was caused by the failure to submit the Statute for preclearance so that it could then be enforced.  For the purposes of the standing inquiry, the panel will assume, without deciding, that Plaintiffs have alleged an injury in fact.  That injury however, is caused by factors independent of Dietz, and thus cannot be redressed by declaratory or injunctive relief against her.

Under United States Supreme Court and Eleventh Circuit precedent, "when a plaintiff seeks a declaration of the unconstitutionality of a state statute and an injunction against its enforcement, a state officer, in order to be an appropriate defendant, must, at a minimum, have some connection with enforcement of the provision at issue."  *Socialist Workers Party v. Leahy*, 145 F.3d 1240, 1248 (11th Cir. 1998); see also *American Civil Liberties Union v. The Florida Bar*, 999 F.2d 1486, 1490 (11th Cir. 1993) (when a plaintiff challenges the constitutionality of a rule of law, it is the state official designated to enforce that rule who is the proper defendant); *Diamond v. Charles*, 476 U.S. 54, 64 (1986).  Although Plaintiffs in this case are not seeking a declaration as to the constitutionality of a state law, we believe that the above stated principal nonetheless applies.  In order to be a proper defendant

13

in this case, a state official must be charged with the duty of enforcing the Statute at issue, and/or with the duty of submitting new laws affecting voting rights to the DOJ for preclearance under Section 5 of the VRA.  Unless Defendant Dietz has the requisite authority, this panel's determination of Plaintiffs' claims would amount to nothing more than an advisory opinion prohibited by Article III's case and controversy requirement.  See *Church v. City of Huntsville*, 30 F.3d 1332, 1335 (11th Cir. 1994) (citing *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 471-72 (1982)).  We can find no Alabama law or rule of any kind bestowing upon the AOC the general authority to enforce any law or to submit new enactments for Section 5 preclearance.

Plaintiffs contend that, in the last sentence of Subsection (a), the Alabama Statute explicitly imposes responsibility for its enforcement upon the AOC. The Alabama Statute provides, in pertinent part, as follows:

(a)    Any justice or judge of an appellate or circuit court of this state shall file . . . with the Secretary of State, a statement disclosing the names and addresses of campaign contributors and the amount of each contribution made to him or her in the election immediately preceding his or her new term in office.  . . . ***When a justice or judge does not file this annual statement, the Secretary of State shall notify the Administrative Office of Courts and that office shall withhold further compensation to the justice or judge pending compliance with this section***.

(b)    The Supreme Court [of Alabama] shall provide . . . a rule or rules . . . as follows:   In an appellate court proceeding the attorneys for all parties

shall serve certificates of disclosure on all attorneys of record . . . Each certificate shall state the amount, if any, of campaign contributions by the respective individual donor or entity to any justice or judge of an appellate court where the case is pending, or if it is a trial court proceeding, the amount, if any, of campaign contributions by the respective individual donor or entity to the judge presiding over the case . . . [T]he court may impose sanctions provided for by Rule 37(b)(2)(C), (D) of the Alabama Rules of Civil Procedure, for the failure of a party to comply with this section after being ordered to do so.

(c)     The action shall be assigned to a justice or judge regardless of the information contained in the certificates of disclosure.  If the action assigned to a justice or judge of an appellate court who has received more than four thousand dollars ($4,000) based on the information set forth in any one certificate of disclosure, or to a circuit judge who has received more than two thousand dollars ($2,000) based on the information set out in any one certificate of disclosure, then, within 14 days after all parties have filed a certificate of disclosure, any party who has filed a certificate of disclosure setting out an amount . . . below the limit applicable to the justice or judge, or an amount above the applicable limit but less than that of any opposing party, shall file a written notice requiring recusal of the justice or judge, or else such party shall be deemed to have waived such right of recusal. . .

Ala. Code § 12-24-2 (emphasis added).  The sentence to which Plaintiffs refer does impose an obligation upon the AOC to withhold compensation from justices and judges who have failed to comply with the disclosure requirements set out in Subsection (a).  Plaintiffs would have the panel interpret this provision as giving the AOC the broad authority to enforce all provisions of the Statute.  However, as Defendant points out, the AOC's duty to withhold a justice's or judge's compensation is triggered only by notification from the Secretary of State of a justice's or judge's

15

non-compliance with Subsection (a)'s disclosure requirements.  The AOC is the proper agency for this duty, as it is responsible for the payment of justice's and judge's salaries.  See Ala. Code § 12-5-13(b).  The AOC may have a great deal of discretion with regard to expenditure of funds for the courts generally, however, under the Statute, it has no discretion.  Its duty is purely ministerial.  The Statute does not give the AOC discretion to determine whether a justice or judge has complied with the disclosure requirements set out in Subsection (a), or if that justice's or judge's compensation is to be suspended.  The discretion to make those decisions is vested explicitly in the Secretary of State.  The AOC's sole responsibility is, upon receiving information from the Secretary of State, to complete the paper work necessary to effect the withholding of a justice's or judge's compensation.  Unless and until the Secretary of State performs its duties under the Statute, the AOC has no duty or authority thereunder whatsoever.

More importantly, Plaintiffs do not allege any injury caused by the non-enforcement of the disclosure requirements of Subsection (a).  They have attempted to assert their rights under Subsection (c), which sets out the circumstances under which parties have the right to require the recusal of the justice or judge presiding over their case.  The injury Plaintiffs allege as a result of the non-enforcement of the

Statute, is the denial of their motions for recusal of their state court judges.[6] Subsection (c) does not explicitly impose any responsibility for its enforcement upon the AOC, and Plaintiffs do not contend that it does.

Likewise, we are aware of no authority under which the AOC is charged with the duty of submitting a newly enacted law to the DOJ for preclearance under Section 5 of the VRA. Should the panel determine that the Alabama Statute <u>does</u> require preclearance, the remedy Plaintiffs request is for the court to "issue such orders as are necessary to ensure that Alabama submits the Statute[] for preclearance as expeditiously as possible. . . " (Doc. 1, Compl. at 14, ¶ 27.) As is apparent from the history of the Alabama Statute as summarized above, the submission of new statutes for preclearance under Section 5 of the VRA is the duty of the Attorney General of Alabama. Moreover, the determination of whether to submit a particular statute for preclearance is within his discretion.

Because Dietz is not the state official charged with the duty of enforcing the Statute or submitting the Statute for preclearance, any injury allegedly caused by the failure to do so is not "fairly traceable" to any action of Dietz or the AOC. Rather, any such injury is the result of inaction of third parties not before this panel: the

---

[6]The traditional relief for the denial of a motion to recuse is a motion for a new trial under Ala. R. Civ. P. 59 or 60.

17

Supreme Court of Alabama, the Alabama Secretary of State, and/or the Attorney General of Alabama. Injury suffered at the hands of these third parties, "is insufficient by itself to establish a case or controversy in the context of this suit," for neither has been named as a defendant. *See Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 41 (1976). Under the circumstances, Plaintiffs have failed to meet the causation prong of the standing analysis.

For much the same reasons as outlined above, Plaintiffs cannot meet the third component of the standing inquiry – redressability. The Supreme Court has explained redressability as follows:

> In all civil litigation, the judicial decree is not the end but the means. At the end of the rainbow lies not a judgment, but some action (or cessation of action) by the defendant that the judgment produces–the payment of damages, or some specific performance, or the termination of some conduct. Redress is sought *through* the court, but *from* the defendant. This is no less true of a declaratory judgment suit than of any other action. The real value of the judicial pronouncement–what makes it a proper judicial resolution of a "case or controversy" rather than an advisory opinion–is in the settling of some dispute *which affects the behavior of the defendant towards the plaintiff*.

*Hewitt v. Helms*, 482 U.S. 755, 761 (1987) (emphasis in original). "Absent a redressable injury a judicial determination of plaintiff's claim would amount to an advisory opinion prohibited by Article III's case and controversy requirement." *Church*, 30 F.3d at 1335. The alternative remedies Plaintiffs seek – an injunction

requiring the enforcement of the Alabama Statute, or an appropriate order to ensure
that Alabama submits the Statute for preclearance – cannot be redressed by the AOC
because it does not have the power to take either action.  No remedy handed down
against the Dietz or AOC could abate Plaintiffs' alleged injury.  Thus, Dietz is not a
proper defendant to this matter, and no "case or controversy" within the scope of
Article III exists.  Dietz's Motion to Dismiss is due to be granted.

## III.   CONCLUSION

Based on the forgoing, the panel concludes that Defendant's Motion to Dismiss
is due to be granted.  An Order granting Dietz's Motion and dismissing Plaintiffs'
case will be entered contemporaneously herewith.

**DONE** and **ORDERED** this the 8th day of June, 2007.


**VIRGINIA EMERSON HOPKINS**
United States District Judge

19